UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JEFFREY THELEN,

    Plaintiff,

v.                                                          Case No. 8:20-cv-1724-TPB-JSS

SOMATICS, LLC, and
ELEKTRIKA, INC.,

    Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT SOMATICS' MOTION TO DISMISS

This matter is before the Court on "Defendant Somatics, LLC's Motion to Strike and Dismiss Plaintiff's Complaint," filed September 11, 2020.[1] (Doc. 15). Plaintiff filed his response in opposition on September 25, 2020. (Doc. 16). After reviewing the motion, response, court file, and record, the Court finds as follows:

### Background[2]

From May 16, 2014 to July 27, 2016, Plaintiff Jeffrey Thelen underwent 92 sessions of Electroconvulsive Therapy ("ECT") using the Thymatron System IV

---

[1] While Somatics' motion nominally requests the Court strike certain allegations, it cites no legal authority or analysis under Rule 12(f) for doing so. As such, the Court will treat this motion solely as a motion to dismiss.

[2] The Court accepts as true the facts alleged in the complaint for purposes of ruling on the pending motion to dismiss. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."). The Court is not required to accept as true any legal conclusions couched as factual allegations. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).

device in Omaha, Nebraska. This ECT device was manufactured by Elektrika and supplied to Somatics who, in addition to also manufacturing the ECT device, promotes and distributes the device. Plaintiff alleges that undergoing ECT treatment with this device caused permanent neurological damage impairing his ability to memorize, retain, and recall information. Plaintiff further alleges that despite knowing of the substantial risks associated with ECT treatment, Somatics and Elektrika manufactured and distributed the device and failed to warn Plaintiff of these risks.

On July 24, 2020, Plaintiff filed his seven-count complaint against Somatics and Elektrika, alleging: (1) negligence (Count I), (2) strict liability (Count II), (3) breach of implied warranty of merchantability (Count III), (4) breach of implied warranty of fitness (Count IV), (5) breach of express warranty (Count V), (6) violation of the Nebraska Consumer Protection Act ("NCPA") (Count VI), (7) and fraudulent misrepresentation (Count VII). Plaintiff seeks punitive damages.

## Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). While Rule 8(a) does not demand "detailed factual allegations," it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In order to survive a motion to dismiss, factual allegations must be sufficient "to state a claim to relief that is plausible on its face." *Id.* at 570.

Federal Rule of Civil Procedure 9(b) requires a party alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). As courts have explained, the purpose of rule (9)(b) is to ensure that defendants have sufficient notice and information to formulate a defense. *See Trinity Graphic, USA, Inc. v. Tervis Tumbler Co.*, 320 F. Supp. 3d 1285, 1294 (M.D. Fla 2018). "Essentially, a plaintiff satisfies Rule 9(b) by alleging who, what, when, where, and how." *Id.* (citing *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006).

When deciding a Rule 12(b)(6) motion, review is generally limited to the four corners of the complaint. *Rickman v. Precisionaire, Inc.*, 902 F. Supp. 232, 233 (M.D. Fla. 1995). Furthermore, when reviewing a complaint for facial sufficiency, a court "must accept [a] [p]laintiff's well pleaded facts as true, and construe the [c]omplaint in the light most favorable to the [p]laintiff." *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "[A] motion to dismiss should concern only the complaint's legal sufficiency, and is not a procedure for resolving factual questions or addressing the merits of the case." *Am. Int'l Specialty Lines Ins. Co. v. Mosaic Fertilizer, LLC*, 8:09-cv-1264-T-26TGW, 2009 WL 10671157, at *2 (M.D. Fla. Oct. 9, 2009) (Lazzara, J.).

## Analysis

In its motion, Somatics presents the following arguments to dismiss Plaintiff's claims: (1) Count I is preempted, (2) Count VII fails to meet the heightened pleading requirements of Rule 9, (3) Counts I, II, and VII fails to allege proximate cause, (4) Counts III, IV, and V fail to allege privity, (5) Count I is barred

by the learned-intermediary doctrine, and (6) Count VI fails to state a claim under the NCPA.

## *Preemption*

Somatics first argues that Plaintiff's negligence claim (Count I) is preempted by 21 U.S.C. § 360k(a). Plaintiff disagrees, and he instead argues that this statute does not preempt state law negligence claims for products – like the Thymatron device – approved via the 510(k) process.[3]

21 U.S.C. § 360k(a) precludes states from implementing requirements "with respect to a [medical] device" that are "different from, or in addition to" FDA requirements. However, the Supreme Court has previously held that this statute does not preempt state law negligence claims for medical devices approved by the 510(k) process. *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 500-02 (1996) (holding Florida negligence claims escape preemption because state requirements were not developed "with respect to" medical devices). As this decision remains binding case law, Plaintiff's state law negligence claim (Count I) is not preempted.

## *Rule 9 Pleading Requirements*

Next, Somatics argues that Plaintiff's fraudulent misrepresentation claim (Count VII) should be dismissed for failing to satisfy the pleading requirements of

---

[3] The Thymatron ECT device is regulated by the Federal Food, Drug, and Cosmetic Act ("FDCA") and the subsequent Medical Device Amendments ("MDA"). As required by these statutes, it appears to be undisputed that this device went through the 510(k)-approval process, which provides expedited approval to medical devices that are substantially equivalent to those already in use. This process allows medical devices on the market before the MDA to be grandfathered in without forcing them to undergo the more arduous and time-intensive Premarket Approval process that would otherwise be required.

Rule 9.  To survive a motion to dismiss under the heightened Rule 9(b) pleading standard, a plaintiff must allege (1) the statements that were made, (2) the time and place of the statements and the person that made the statements, (3) the content of the statements and how they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.  *See Drilling Consultants, Inc. v. First Montauk Secs. Corp.*, 806 F. Supp. 2d 1228, 1234 (M.D. Fla. 2011) (quoting *Ziemba v. Cascade Int'l Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)).

Plaintiff fails to meet the heightened pleading requirements of Rule 9.  The complaint lists only one allegedly fraudulent statement with particularity and does not mention the time and place that statement is made, how the specific statement misled Plaintiff, or what Somatics obtained as a result.  Accordingly, the motion to dismiss is due to be granted as to this ground.  Count VII is dismissed without prejudice, with leave to amend.

*Proximate Cause*

Somatics contends Plaintiff has failed to state the proximate cause required in Counts I, II and VII.  Upon review, the Court concludes that Plaintiff has sufficiently alleged proximate causation.  Somatics' motion to dismiss on this ground is therefore due to be denied.

*Privity*

Somatics also argues Count III (breach of implied warranty of merchantability), Count IV (breach of implied warranty of fitness), and Count V (breach of express warranty) should be dismissed for failing to allege the required

privity. Plaintiff asserts that under Nebraska law, privity is not required. This presents a tricky choice of law issue.

Federal courts sitting in diversity are directed to "apply the choice of law rules for the state in which it sits." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1139 (11th Cir. 2005). Under Florida law, a court makes a separate choice of law determination with respect to each particular issue under consideration and "must characterize the legal issue and determine whether it sounds in torts, contracts, property law, etc.." *Groupo Televosa, S.A. v. Telemundo Commc'ns Grp.*, 485 F.3d 1233, 1240 (11th Cir. 2007). "Once it has characterized the legal issue, it determines the choice of law rule that the forum state applies to that particular type of issue." *Id*.

Under Florida law, breach of express and implied warranty claims sound in contract for choice-of-law purposes. *See David v. Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1315 (S.D. Fla. 2009). For contract claims, courts sitting in Florida apply the law of the place where the contract was made for matters concerning substantive contractual obligations pursuant to the doctrine of *lex loci contractus*. *Id*. at 1315-16; *Coulter v. ADT Security Servs.*, 744 Fed. App'x 615, 618 (11th Cir. 2018). "A contract is made at the place where the last act necessary to complete the contract is done." *Colkitt v. Oncology Servs. Int'l, Inc.*, No. 8:19-cv-2302-T-33AEP, 2019 WL 8273661, at *3 (M.D. Fla. Dec. 18. 2019) (citing *Jemco, Inc. v. United Parcel Serv., Inc.*, 400 So. 2d 499, 500 (Fla. 3d DCA 1981)) (internal quotation omitted).

In this case, Plaintiff alleges that he was prescribed ECT treatment and underwent all 92 sessions in Omaha, Nebraska. Taking the facts in light most favorable to the Plaintiff – as the Court is required to do at this stage – Counts III, IV, and V are governed by Nebraska law. Nebraska law unequivocally does not require privity for breach of express or implied warranty claims. *See Peterson v. N. Am. Plant Breeders*, 218 Neb. 258, 264 (Neb. 1984). Somatics motion to dismiss on this ground is accordingly denied.

### *Learned-Intermediary Doctrine*

Somatics also argues that Plaintiff's negligence claim (Count I) should be dismissed under the learned intermediary doctrine. Plaintiff disagrees and argues Count I falls under Nebraska law, which permits this claim to proceed.

The Court finds Count I – like Counts III, IV, and V – is governed by Nebraska Law. Under the most significant relationship test – applied by Florida courts to ascertain which law applies to tort claims – Nebraska bears the most significant relationship with this claim. *See Trumpet Vine Invs., N.V. v. Union Capital Partners I, Inc.*, 92 F.3d 1110, 1115-16 (11th Cir. 1996); *see also Mezroub v. Capella*, 702 So. 2d 562, 565 (Fla. 2d DCA 1997) ("The place of injury still determines which state's law applies, unless some other state has a more 'significant relationship' to the issue"). Somatics' argument that Count I is barred by the learned intermediary doctrine under Florida law is accordingly denied.

### *Nebraska Consumer Protection Act*

Somatics contends Plaintiff has failed to state a claim under Nebraska's Consumer Protection Act. Specifically, Somatics argues the NCPA does not provide for a private right of action for Plaintiff's claims. In Plaintiff's response, he concedes that this cause of action should be dismissed. The motion is therefore granted as to this ground, and Count VI is dismissed with prejudice and should not be refiled.

### *Punitive Damages*

Lastly, Somatics argues Plaintiff's prayer for punitive damages should be dismissed. If Nebraska law applies to this claim, punitive damages are not permitted. *See State ex rel Cherry v. Burns*, 258 Neb. 216, 226 (Neb. 1999). On the other hand, if Florida law applies, Plaintiff may be able to pursue punitive damages in certain circumstances. *See W.R. Grace & Co.-Conn. v. Waters*, 638 So. 2d 502, 503 (Fla. 1994).

Under Florida law, courts are to apply the most significant relationship test to ascertain which law governs punitive damages. *See Krause v. Novartis Pharms. Corps.*, 926 F. Supp. 2d 1306, 1309-10 (N.D. Fla. 2013). Pursuant to this test, courts should consider the following factors: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Id*. at 1309 (internal quotation omitted). The first factor – the place

where the injury occurred – typically determines which law applies. *Id*. However, "[o]ther factors may combine to outweigh the place of injury as a controlling consideration." *Bishop v. Fla. Specialty Paint, Co.*, 389 So. 2d 999, 1001 (Fla. 1980). These other factors include: "(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied." *Id*. at n.1 (quoting Restatement (Second) of Conflict of Laws § 6 (1971)).

Here, the Court finds Florida law should be applied to punitive damages. Some factors weigh in favor of the application of Nebraska law – the injury occurred in Nebraska, Plaintiff is a Nebraska resident, and the relationship between the parties is centered in Nebraska. However, the remaining factors outweigh these considerations. Somatics is a Florida corporation and the actions for which Plaintiff seeks punitive damages – marketing, mislabeling, and distributing the Thymatron device – presumably occurred in Somatics' headquarters in Florida. Furthermore, Florida punitive damages law is "designed to punish the tortfeasor" and deter wrongful conduct. *Krause*, 926 F. Supp. 2d at 1310-11. "[W]hen the primary purpose of the tort rule involved is to deter or punish misconduct, the place where the conduct occurred has peculiar significance." *Id*. at 1311 (quoting Restatement (Second) Conflict of Laws § 145, cmt. e). Given that Florida's punitive damages law

is intended to punish misconduct, the Court finds that this consideration weighs heavily in favor of the application of Florida law to the punitive damages claim. *See id.* (applying New Jersey punitive damages law to pharmaceutical company with its principle place of business in New Jersey for allegedly mislabeling drugs sold, taken, and injuring Plaintiff outside New Jersey); *see also Dopson-Troutt v. Novartis Pharm. Corp.*, No. 8:06-cv-1708-T-24EAJ, 2013 WL 3808205, at *2 (M.D. Fla. July 22, 2013) (same); *see also Chiles v. Novartis Pharm. Corp.*, 923 F. Supp. 2d 1330, 1333 (M.D. Fla. 2013) (same).

Because Florida law applies, Plaintiff may be able to pursue punitive damages. Punitive damages in Florida are warranted "when a defendant engages in conduct which is fraudulent, malicious, deliberately violent or oppressive, or committed with such gross negligence as to indicate a wanton disregard for the rights of others." *W.R. Grace & Company-Conn. V. Waters*, 638 So. 2d 502, 503 (Fla. 1994). Plaintiffs allegations are sufficient to state a claim for punitive damages. Somatics' request to dismiss punitive damages is, therefore, denied.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) "Defendant Somatics, LLC's Motion to Strike and Dismiss Plaintiff's Complaint" (Doc. 15) is hereby **GRANTED IN PART** and **DENIED IN PART.**

(2) The motion is **GRANTED** to the extent that Count VI is **DISMISSED** with prejudice.

(3) The motion is **FURTHER GRANTED** to the extent that Count VII is **DISMISSED**, with leave to amend.

(4) The motion is otherwise **DENIED**.

(5) Plaintiff is directed to file an amended complaint that corrects the deficiencies identified in this Order on or before March 19, 2021. Failure to file an amended complaint as directed will result in this Order becoming a final judgment as to Count VII. *See Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d 707, 719-20 (11th Cir. 2020).

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 26th day of February, 2021.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**