**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JEFFREY THELEN,

      Plaintiff,

v.                                Case No: 8:20-cv-1724-TPB-JSS

SOMATICS, LLC,

      Defendant.
_____ /

## ORDER ON JURY INSTRUCTION ISSUES

In this product liability case, Plaintiff Jeffrey Thelen sued Somatics, LLC, alleging injury due to electroconvulsive therapy ("ECT") treatments he received using an ECT device manufactured by Somatics. During the trial, the Court discussed with the parties its approach to issues relating to the jury instructions. For the benefit of the parties, this memorandum provides further detail and explanation for the Court's rulings on these issues.

## Background

Thelen has suffered from severe depression and other mental health issues for many years, resulting in hospitalization on more than one occasion. From May 2014 to July 2016, he received over 90 ECT treatments at a hospital in Omaha, Nebraska, using an ECT device manufactured and sold Somatics. Plaintiff alleges that the ECT treatments caused permanent neurological injury, including permanent memory loss and brain damage. On July 24, 2020, Plaintiff filed this product liability suit under various legal theories. After the Court's disposition of counts of the complaint alleging

breach of warranty and design defect, the counts remaining at the time of trial were a

count for negligence that alleged a failure to test or investigate and a failure to warn

(Count I) and a count for strict liability that alleged a failure to warn (Count II).

<u>Analysis</u>

The Court based its approach to the jury instructions in this case on the

Supreme Court of Nebraska's decision in *Freeman v. Hoffman-LaRoche, Inc.*, 618

N.W.2d 827 (Neb. (2000).  In *Freeman*, the court undertook a comprehensive

discussion of Nebraska products liability law in the context of a claim of injury from a

prescription drug.  Two aspects of *Freeman* dictate the approach taken by the Court

here and further discussed below.

First, *Freeman* expressly adopted the learned intermediary doctrine as set forth

in the Restatement (Third) of Torts: Products Liability § 6(d).  That section, quoted in

full and adopted by *Freeman* "as the applicable test for determining whether a

manufacturer may be liable for a warning defect in prescription drug cases," provides

as follows:

> A prescription drug or medical device is not reasonably safe due to
> inadequate instructions or warnings if reasonable instructions or
> warnings regarding foreseeable risks of harm are not provided to:
>
> (1)     prescribing and other health-care providers who are in a
> position to reduce the risks of harm in accordance with the instructions
> or warnings; or
>
> (2)     the patient when the manufacturer knows or has reason to know
> that health-care providers will not be in a position to reduce the risks
> of harm in accordance with the instructions or warnings.

*Freeman*, 618 N.W.2d at 842.

Second, *Freeman* cited with approval the Third Restatement's adoption of a

"single theory" approach to product liability claims.  As *Freeman* explained, "[t]he

Third Restatement recognizes the merger of doctrines by adopting a single theory

approach.  Instead of focusing on doctrinal tort categories such as negligence or strict

liability, the Third Restatement functionally defines each of the three basic types of

product defect claims:  design, manufacturing, and warning defect claims."  The court

continued, "The Third Restatement adopts the position that the definition of 'defect' is

the important issue and should remain the same regardless of the doctrinal tort

category under which it is brought."  *Id*. at 843.  The court then quoted with approval

from § 2, comment n of the Restatement:

> A separate and more difficult question arises as to whether a case
> should be submitted to a jury on multiple theories of recovery. Design
> and failure-to-warn claims may be combined in the same case because
> they rest on different factual allegations and distinct legal concepts.
> However, two or more factually identical defective-design claims or two
> or more factually identical failure-to-warn claims should not be
> submitted to the trier of fact in the same case under different doctrinal
> labels. Regardless of the doctrinal label attached to a particular claim,
> design and warning claims rest on a risk-utility assessment. *To allow
> two or more factually identical risk-utility claims to go to a jury under
> different labels, whether "strict liability," "negligence," or "implied
> warranty of merchantability," would generate confusion and may well
> result in inconsistent verdicts.*  [emphasis supplied][1]

*Id*.

The Court's goal in crafting instructions for this case was to provide the jury

with an understandable way to apply the principles adopted in *Freeman*.  The Court

did not believe the parties' proposed instructions achieved that goal, and the Court

---

[1] The *Freeman* court quoted this provision in examining whether an implied warranty claim merged into design and/or manufacturing defect claims.  However, the court's rationale applies to failure to warn claims no less than warranty clams, and the quoted Restatement provision expressly addresses failure to warn.

accordingly prepared its own set of instructions, which it modified after discussions with counsel.

The Court now discusses three issues relating to the instructions.

### Substantive Standard for Failure to Warn

The Court's instructions use the term "adequate instructions or warnings" to mirror the language of Third Restatement § 6(d) adopted in *Freeman* and further explain that a product lacks such instructions or warnings if it lacks "reasonable instructions or warnings regarding foreseeable risks of harm." The Court's instructions, however, omit the terms "defective" and "not reasonably safe." Under § 6(a) and § (6)(b)(3) of the Restatement, a product is "defective" if it is not reasonably safe due to inadequate instructions or warnings as defined in § 6(d). Under § 6(d), in turn, a product is not reasonably safe due to inadequate instructions or warnings if it lacks "reasonable instructions or warnings regarding foreseeable risks of harm." It appears to the Court therefore that the latter phrase provides the ultimate substantive standard for the jury to apply, and an instruction to the jury framed solely in terms of that standard is simpler and clearer.

### Negligence v. Strict Liability

The Court's instructions presented the case to the jury on a single claim of a strict liability warning defect. As noted above, Plaintiff's complaint included a count for negligence, with allegations of failure to warn and failure to test or investigate, and a count for strict liability failure to warn. However, the Court believes that presenting the jury with two failure to warn claims based on essentially the same factual predicate would run directly contrary to *Freeman*. *Freeman* endorsed the concept that

all product liability claims, whether under a theory of negligence or strict liability,
turn on the existence of a manufacturing, warning, or design defect in the product.
*See Freeman*, 618 N.W.2d at 843.  Therefore, sending the case to the jury under two
different warning theories would lead to confusion and inconsistent results.  *See id.*
For example, under a two-theory approach, the jury might conclude under the
negligence theory that the manufacturer was negligent (that is, failed to act with
reasonable care) with respect to the warnings it provided with its product, while at the
same time concluding under the strict liability theory that the warnings were
adequate.  In the Court's view, this would make no sense.  As comment m to § 2 of the
Third Restatement notes, "[i]f a product is not . . . defective . . ., it is not negligence to
manufacture it that way."  *Id.* (quoting *Bilotta v. Kelley Co.*, 346 N.W.2d 616 (Minn.
1984)).

    Thelen argued for the submission to the jury of both negligence and strict
liability claims, pointing out that his negligence count included allegations not only
that Somatics failed to provide an adequate warning but also that Somatics failed to
adequately test or investigate the risks posed by its product.  However, the Court
believes that submission to the jury of negligent failure to test or to investigate as a
separate legal theory in addition to failure to warn would be redundant, would
generate confusion, and would be inappropriate under *Freeman*.  Unless Somatics'
negligent failure to test resulted in a warning defect, then it could not have caused a
cognizable injury and is therefore not independently actionable.

    It is also worth noting that a number of courts in different jurisdictions,
including Florida, have held there is no separate cause of action for failure to test; it is

subsumed within a claim for failure to properly design or properly warn.  *See, e.g.,*

*Kociemba v. G.D. Searle & Co.*, 707 F. Supp. 1517, 1527 (D. Minn. 1989) ("If the

manufacturer designs the product safely, manufactures the product safely, and

provides an adequate warning of dangers inherent in the use of the product, then a

failure to test the product cannot, standing alone, cause any injury.  The duty to test is

a subpart of the other three duties because a breach of the duty to test cannot by itself

cause any injury."); *see also Couick v. Wyeth, Inc.*, No. 3:09-CV-210-RJC-DSC, 2012

WL 79670, at *7 (W.D.N.C. Jan. 11, 2012) (citing *Kociemba* and dismissing failure to

test claim); *Adams v. G.D. Searle & Co.,* 576 So. 2d 728, 730-31 (Fla. 2d DCA 1991)

("We agree with [*Kociemba*] that a manufacturer's duty to inspect and test is not a

separate cause of action. The duty to test, as that court concluded, is a subpart of a

manufacturer's duty to design a product with reasonable care, and thus is subsumed

in the plaintiffs' claims for defective design and failure to warn.").

Submission of a product liability case to the jury on a single claim of strict

liability failure to warn does not foreclose a plaintiff's ability to present evidence

regarding the manufacturer's failure to test or investigate the risks associated with

the product.  As the Restatement explains, "evidence that the defendant did or did not

conduct adequately reasonable research or testing before marketing the product may

be admissible (but is not necessarily required) regardless of whether the claim is based

on negligence, strict liability, or implied warranty of merchantability."  Restatement

(Third) of Torts: Products Liability § 2, comment n (1998).  Thelen presented such

evidence here.

*Proximate Cause in the Learned Intermediary Context*

The Court included an express instruction on the standard for proximate cause in the "learned intermediary" context.  Under the learned intermediary rule adopted in *Freeman*, the manufacturer of a product available for use only under a physician's prescription fulfills its duty to warn by providing adequate warnings to the prescribing physician.  As a corollary, in order to be actionable, the absence of an adequate warning must have impacted the physician's conduct.  While *Freeman* did not discuss this principle, it is widely accepted and has been applied by federal district courts in Nebraska.  *See, e.g.*, *Ideus v. Teva Pharm. USA, Inc.*, 361 F. Supp. 3d 938, 946 (D. Neb. 2019) ("[T]o avoid summary judgment, Ideus must demonstrate that had the package insert contained a different warning, the treating physician would not have used or prescribed Paragard.").

Accordingly, the Court's instructions told the jury that in order to establish that the lack of an adequate warning constituted a proximate cause of injury, Thelen must prove that his physician would have altered his conduct had an adequate warning been provided.  However, a further point of disagreement between the parties relates to whether the learned intermediary causation standard may be met only by evidence that the plaintiff's physician, if adequately warned, would not have prescribed or recommended the drug or device.  Somatics advocates this narrower approach, which focuses solely on whether the physician would still have been inclined to use the product if he or she had received stronger warnings.  Thelen argues, on the other hand, for a broader approach under which the standard may be met by evidence the physician would have altered his or her conduct in some other way that would have

prevented the plaintiff's injury. For example, in this case, Thelen contended that had his treating physician received an adequate warning regarding the risk of brain damage, he would have relayed the warning to Thelen, and Thelen, in turn, would not have consented to undergo ECT treatment. Accordingly, Thelen argues, the chain of causation is established.

The Court's research located no controlling Nebraska authority on this point. Somatics cites Nebraska district court decisions applying the learned intermediary rule that speak in terms of whether the physician would have prescribed the product, although one of the cases Somatics cites uses the somewhat broader language "used or "prescribed." *See Langner v. Boston Scientific Corp.*, 492 F. Supp. 3d 925, 933 (D. Neb. 2020) ("[T]he plaintiff must demonstrate that the treating physician would not have prescribed the medical device if the manufacturer had given a different warning."); *Ideus*, 361 F. Supp. 3d at 946 ("[T]o avoid summary judgment, Ideus must demonstrate that had the package insert contained a different warning, the treating physician would not have used or prescribed ParaGard.").

Thelen, on the other hand, cites *Barnhill v. Boston Scientific Corp.*, No. 8:20-CV-182, 2020 WL 12991951 (D. Neb. Oct. 9, 2020), which has language suggesting the broader approach might be accepted. *See id.* at *3 (noting that the plaintiff's physician "testified to risks she was not aware of before treating Barnhill which may have changed her prescribing decision or at least altered the warning she provided to her patient."). Thelen also cites *Marlin v. Boston Scientific Corp.*, No. 8:20-CV-181, 2020 WL 13005014, at *5 (D. Neb. Oct. 9, 2020), where the district court applied the broader approach in denying a manufacturer's motion for summary judgment. The *Marlin*

court, however, cited no Nebraska law and offered no explanation of the legal basis for its approach.

Decisions from other jurisdictions appear to be mixed.  Somatics points to Eleventh Circuit authority under the law of Florida and Georgia suggesting that the causation analysis focuses solely on the physician's point of view.  *See Salinero v. Johnson & Johnson*, 995 F.3d 959, 965 (11th Cir. 2021) ("The causal chain may still be broken even if the manufacturer provides an inadequate warning so long as the physician is aware of the risks or would still recommend the device despite those risks."); *Hubbard v. Bayer HealthCare Pharm. Inc.*, 983 F.3d 1223, 1236 (11th Cir. 2020) ("Thus, whatever the impact of the 2012 label change on Dr. Rowley's patient communications practices, the risks discussed in these communications did not affect his prescribing decisions for women situated similarly to Karen Hubbard.").  Another Eleventh Circuit case, however, *Blackburn v. Shire US Inc.*, 18 F.4th 1310 (11th Cir. 2021), includes language supporting a broader view.  *See id.* at 1318 ("[T]he plaintiff must show that curing the label's inadequacies would have altered the prescribing physician's conduct in a way that would have prevented the plaintiff's injury.").  Further, the Alabama Supreme Court in responding to a certified question in that case adopted a broader view, allowing a plaintiff to prevail by showing that different instructions would have altered the physician's treatment and monitoring of the patient, not simply the physician's prescribing decision.  *See Blackburn v. Shire U.S., Inc.*, No. 1210140, 2022 WL 4588887, at *10-13 (Ala. Sept. 30, 2022).  Other decisions taking a broader view of causation include *Thacker v. Ethicon, Inc.*, 47 F.4th 451, 461 (6th Cir. 2022) (Kentucky law) and *McNeil v. Wyeth*, 462 F.3d 364, 373 (5th Cir. 2006)

(Texas law).  This issue is the subject of a certified question by the Ninth Circuit to the California Supreme Court in *Himes v. Somatics, LLC*, 29 F.4th 1125 (9th Cir. 2022).

The learned intermediary rule, under which the manufacturer's duty to warn is satisfied by warnings to the prescribing physician, dictates that proximate cause requires evidence that an adequate warning would have altered the physician's conduct and thereby prevented the plaintiff's injury.  However, Somatics has articulated no reason the causation analysis should be further limited to focus solely on the physician's decision to prescribe or recommend use of the product in question, as long as the plaintiff can otherwise establish that the absence of an adequate warning was a "but for" (or cause in fact) and proximate cause of the injury.  While there is no controlling authority from Nebraska courts, numerous courts in other jurisdictions, as well as at least one Nebraska federal district court, *see Marlin*, 2020 WL 13005014, at *5, have taken the broader approach.  Accordingly, the Court followed this approach in its instructions to the jury.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 12th day of June, 2023.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**